UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ALLTEL COMMUNICATIONS, LLC                                    PLAINTIFF

v.                          CASE NO. 4:10CV00130 BSM

EUGENE DEJORDY                                                 DEFENDANT

<u>ORDER</u>

Defendant Eugene DeJordy moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint filed by plaintiff Alltel Communications, LLC ("Alltel") for failure to state a claim, [Doc. No. 10] and Alltel objects. [Doc. No. 12]. For the reasons set forth below, DeJordy's motion is denied.

I. ALLEGATIONS

Viewed in the light most favorable to Alltel, the nonmoving party, the facts are as follows. DeJordy was an attorney employed by Alltel or its predecessors from 1995 through 2007. Compl. ¶¶ 1, 10. While working for Western Wireless Corporation ("Western Wireless"), a predecessor to Alltel, DeJordy served as executive director for regulatory affairs and, in that capacity, allegedly negotiated the Tate Woglaka Service Agreement (the "Agreement") with the Oglala Sioux Tribe (the "Tribe"), a recognized Native American tribe located in South Dakota. Compl. ¶ 11. The Agreement set forth the terms and conditions applying to telecommunications services that Western Wireless was to provide to the Tribe on the Pine Ridge Indian Reservation (the "Reservation") in South Dakota. Compl. ¶ 11. In negotiating the Agreement, DeJordy received confidential information from, and provided

confidential legal advice to, Western Wireless. Compl. ¶ 11.

Western Wireless was acquired by Alltel's parent corporation in August 2005, and DeJordy became Alltel's senior vice president for regulatory affairs. Compl. ¶ 12. On November 2, 2007, DeJordy was terminated for unsatisfactory performance. Compl. ¶ 13. Alltel alleges that DeJordy was paid $2,039,983 in severance in exchange for entering into a separation agreement that contained a nonsolicitation provision, as well as confidentiality and noncooperation provisions. Compl. ¶ 13-15.

In the summer of 2008, DeJordy recruited Tom Reiman, an Alltel employee, to join him in forming a company to provide telecommunications services to Alltel's customers on Native American tribal reservations. Compl. ¶ 19. DeJordy and Reiman formed Native American Telecom Enterprises, LLC ("Native American Telecom"), a South Dakota corporation that manages tribally-owned telecommunications systems. Compl. ¶ 20.

On January 9, 2009, Alltel's parent corporation formally merged with Verizon Wireless. Compl. ¶ 22. Prior to that date, the companies agreed to divest certain properties (Alltel's South Dakota assets among them) that could jeopardize competition and raise antitrust concerns. Compl. ¶ 22. In compliance with its agreement with the Department of Justice, Verizon Wireless completed an auction process to accept bids for the South Dakota assets. Compl. ¶ 23. As a result of the bidding process, AT&T Mobility, LLC was to receive the South Dakota assets, including those on the Reservation. Compl. ¶ 23.

When the Tribe learned of Verizon Wireless's planned sale of the assets on the

Reservation, it initiated an effort to obtain the assets for itself. Compl. ¶ 24. Specifically, counsel for the Tribe wrote to the FCC that the Tribe was "exercising Tribal sovereignty and jurisdiction pursuant to the [Agreement]" and planned to "take ownership and control of telecommunications services and facilities" on the Reservation. Compl. ¶ 25. Indeed, DeJordy notified Verizon that he represented the Tribe and formally requested that Verizon divest the assets directly to the Tribe. Compl. ¶ 26. DeJordy later argued that the sovereignty provisions of the Agreement mandated that Verizon Wireless turn over the assets to the Tribe. Compl. ¶ 27.

On October 21, 2009, the Tribe brought suit in the Oglala Sioux Tribal Court seeking to enjoin Alltel and Verizon Wireless from selling the assets to AT&T. Compl. ¶ 28. The tribe based its petition for a injunctive relief on its claimed rights under the Agreement. Compl. ¶ 28. Alltel alleges that DeJordy secretly acted as the Tribe's attorney as proven by his name appearing on the certificate of service and by an email communication from the Tribe's attorney of record that stated that "her filing was on behalf of another attorney . . . DeJordy." Compl. ¶¶ 29-30. Alltel alleges that DeJordy was providing legal advice to the Tribe by suggesting the arguments it should make in seeking to obtain the assets on the Reservation. Compl. ¶ 32.

On November 4, 2009, counsel for Alltel wrote to DeJordy to remind him that the confidentiality provision in his separation agreement forbade him from supporting the Tribe in a legal proceeding against Alltel as well as "his ethical obligation not to represent a

different client in a substantially related matter in which that client's interests are materially adverse to the interests of a former client." Compl. ¶ 33. Additionally, Alltel alleges that Verizon Wireless's in-house counsel received forwarded email communications that indicated DeJordy was advising the Tribe in its settlement negotiations. Compl. ¶ 34. DeJordy has refused to acknowledge any violation of the separation agreement and has declined to return sums paid to him pursuant to that Agreement. Compl. ¶ 35.

## II. MOTION TO DISMISS STANDARD

"Dismissal is proper where the plaintiff's complaint fails to state a claim upon which relief can be granted." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing Fed. R. Civ. P. 12(b)(6)). Accepting as true all of the factual allegations contained in the complaint, the court must review the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id.* "The plaintiff need not prove specific facts in support of their allegations, but . . . must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Id.* (internal citations omitted).

## III. DISCUSSION

The motion to dismiss is denied. DeJordy argues that the separation agreement is invalid because it is "overly broad in geographic scope, contains no time limitation, and does not protect a legitimate interest of the plaintiff." In support of this argument, he cites *Bendinger v. Marshalltown Trowell Co.*, 994 S.W.2d 468 (Ark. 1999). While *Bendinger*

4

addresses the validity of covenants not to compete under Arkansas law, it does not address the type of restrictions imposed by DeJordy's separation agreement. As Alltel points out, the separation agreement did not prevent DeJordy from competing against Alltel. He was free to compete with Alltel at any time. The separation agreement limits DeJordy's use of confidential information he obtained while employed at Alltel and prevents him from recruiting current Alltel employees for a period of one year. As such, the standards regarding the appropriate geographic and temporal scope of covenants not to compete do not necessarily apply to the present contract.

For a post-employment contractual restriction to be valid, it must be founded upon valuable consideration, impose a reasonable restraint on the parties, and inflict no injury upon the public's interest in free trade. *See Orkin Exterminating Co. v. Murrell*, 206 S.W.2d 185, 189 (Ark. 1947). The first requirement is easily satisfied because DeJordy received a two million dollar check in consideration for the restrictions contained in the agreement. The latter two requirements will be examined separately as they apply to the confidentiality and noncooperation as well as the nonsolicitation provisions.

The confidentiality and noncooperation provision only imposed on DeJordy the restraint already imposed upon him by the Model Rules of Professional Conduct, namely the duty not to "represent another person in the same or a substantially related matter in which that person's interest are materially adverse to the interests of a former client unless the former client gives informed consent, confirmed in writing." Model R. Prof. Conduct 1.9(a).

Thus, it is certainly a reasonable restraint. Furthermore, the public's interest in free trade is not harmed by a prohibition against using confidential information to encourage or assist a lawsuit against one's former employer. Therefore, the provision appears to be valid and enforceable under Arkansas law.

The nonsolicitation provision prevents DeJordy from recruiting Alltel employees for one year following the separation agreement's effective date. Given the limited duration of this provision, it is both a reasonable restraint on the parties and inflicts no injury upon the public's interest in free trade. Therefore, the provision appears to be valid and enforceable under Arkansas law.

In summary, DeJordy has not met his burden to show that the restrictive provisions in the separation agreement are invalid. Accordingly, his motion to dismiss for failure to state a claim [Doc. No. 10] is denied.

IT IS SO ORDERED this 17th day of February, 2011.

_____
UNITED STATES DISTRICT JUDGE